UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LILLIAN HUFFMAN, o/b/o ) | |
| BRIAN HUFFMAN, a minor, ) | |
|     PLAINTIFF, ) | |
| ) | |
| vs. ) | CASE NO. 05-CV-42-FHM |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of the Social Security ) | |
| Administration, ) | |
|     DEFENDANT. ) | |

## ORDER

Lillian Huffman, on behalf of her minor son, Brian Huffman, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[1] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. §405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d 1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003).

---

[1] Huffman's May 28, 2002 application for Supplemental Security Income benefits was denied initially and upon reconsideration. A hearing before an Administrative Law Judge (ALJ) was held on November 24, 2003. By decision dated May 15, 2004, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the ALJ's decision on December 8, 2004. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Kelley v. Chater*, 62 F.3d 335, 337 (10th Cir. 1995); *Casias v. Secretary of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *Hamilton v. Secretary of Health & Human Services*, 961 F.2d 1495 (10th Cir. 1992).

Brian Huffman (hereinafter "the child") was born August 27, 1996. [R. 46]. He was 7 years old at the time of the decision. [R. 15]. His mother, Lillian Huffman (hereinafter "Plaintiff") claims her son is disabled as a result of attention deficit disorder with hyperactivity (ADHD), oppositional defiant disorder (ODD), and possible Asperger's syndrome.[2]

The ALJ found that the child has Attention Deficit/Hyperactivity Disorder and Oppositional Defiant Disorder which are severe impairments. [R. 19]. He determined, however, that these conditions do not meet, medically equal, or functionally equal any of the impairments listed in Appendix 1 to Subpart P. Regulations No. 4, and that, therefore, Plaintiff is not disabled for purposes of childhood disability benefits under Title XVI of the Social Security Act. *Id.*

Under the Social Security Act, a child under eighteen years of age is "disabled" if the child "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in

---

[2] A pervasive developmental disorder resembling autistic disorder, being characterized by severe impairment of social interactions and by restricted interests and behaviors, but lacking the delays in development of language, cognitive function, and self-help skills that additionally define autistic disorder. It may be equivalent to a high-functioning form of autistic disorder. *Dorland's Ill. Med. Dictionary*, 29th ed. (2000) p. 1749.

2

death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 1382c(a)(3)(C)(i).  "A sequential three-step process guides the Commissioner's determination of whether a child meets this criteria. The ALJ must determine, in this order, (1) that the child is not engaged in substantial gainful activity, (2) that the child has an impairment or combination of impairments that is severe, and (3) that the child's impairment meets or equals an impairment listed in Appendix 1, Subpart P of 20 C.F.R. Pt. 404. 20 C.F.R. §§ 416.924(a)." *Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1237 (10th Cir.2001).  In making the third determination—whether a child's impairment meets or equals a listed impairment —the ALJ must consider whether the impairment, alone or in combination with another impairment, "medically equals, or functionally equals the listings."[3]  *Id.* at 1237-8 (citations omitted).  The ALJ assesses all relevant factors, including (1) how well the child initiates and sustains activities, how much extra help he needs, and the effects of structured or supportive settings; (2) how the child functions in school; and (3) how the

---

[3] Functional equivalency means that the impairment is of "listing- level severity; i.e., it must result in 'marked' limitations in two domains of functioning or an 'extreme' limitation in one domain...." 20 C.F.R. §§ 416.926a(a). A marked limitation is one that interferes seriously with the child's "ability to independently initiate, sustain, or complete activities." *Id.* §§ 416.926a(e)(2)(i). "It is the equivalent of the functioning [the Commissioner] would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean." *Id.* The regulations state:

> If you are a child of any age (birth to the attainment of age 18), we will find that you have a "marked" limitation when you have a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and your day-to-day functioning in domain-related activities is consistent with that score.

*Id.* §§416.926a(e)(2)(iii).

> An "extreme limitation" is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). It can be shown by a valid score on a standardized test that is three or more standard deviations below the mean. *Id.*

child is affected by his medications or other treatment.[4]  *Id. (citing* §§ 416.926a(a)(1)-(3)). The ALJ considers how a child functions in his activities "in terms of six domains."[5] They are: "(i) Acquiring and using information; (ii) Attending and completing tasks; (iii) Interacting and relating with others; (iv) Moving about and manipulating objects; (v) Caring for himself; and, (vi) Health and physical well-being." *Id. (citing* §§ 416.926a(b)(1)(i)-(vi)).

Plaintiff contends that the ALJ erred in the following respects: 1) by failing to explain the weight he gave to the reviewing consultants' opinions; 2) by failing to properly assess whether the child met a listing; 3) by finding the child's mental impairments did not functionally equal a listing; and 4) by failing to evaluate Plaintiff's credibility.  For the following reasons, the Court finds the Commissioner's decision must be reversed and remanded for reconsideration.

## **Credibility Determination**

Plaintiff claims that the ALJ failed to evaluate her credibility.  She contends the ALJ made no assessment of the credibility of Plaintiff's testimony in his decision. Defendant incorporates into the section of her response brief relating to Plaintiff's first contention of error, an argument that the ALJ was not required to provide a reason for

---

[4] The regulations found at 20 C.F.R. §§ 416.926a were amended effective January 2, 2001. The amendments mark a major change in the evaluation process employed by ALJs in child disability cases and provide a single method of evaluation based only on domains of functioning. *See* 65 Fed.Reg. 54747, 54755 (Sept. 11, 2000). The definitions and testing results for marked and extreme disabilities, however, have not changed. *See id.* at 54756.

[5] "Domains" are "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. §§ 416.926a(b)(1).

refuting evidence in the form of Plaintiff's testimony "because [he] did not dispute the truth of Plaintiff's mother's testimony." [Defendant's brief, p. 5].[6]

The ALJ's decision contains the following paragraph regarding Plaintiff's testimony at the hearing:

> At the hearing, the claimant's mother testified that the claimant continued to get into fights periodically on the playground at school. She also stated that the claimant has unusual behavior such as going in circles, hitting his head or making noises when he is agitated, "to calm himself down." She admitted that this too is just periodic behavior and not an everyday event. She also stated that he avoids people. The claimant's mother also mentioned that the claimant has problems maintaining friendships. Under questioning, the claimant's mother mentioned that the Dexedrine has helped the claimant with his anger outbursts which are a daily event.

[R. 19]. No further comment regarding Plaintiff's testimony is found in the ALJ's decision. Nor is there a credibility finding included in the "Findings" portion of his decision.

Contrary to Defendant's argument that Plaintiff's testimony at the hearing was congruent with the ALJ's findings, Plaintiff testified that she "was lucky" to get the child to do his homework once a week and that he was having trouble completing tasks. [R. 185-186]. Plaintiff also testified that the child's anger outbursts occurred about every day and the medication the child was taking for ADHD was not helping that behavior in spite of the increase in dosage. [R. 188-189]. The ALJ found that the child's impairments caused a "less than marked limitation" in the domain of attending and

---

[6] The Court notes that, in so doing, Defendant did not comply with the Court's Scheduling Order [Dkt. 10] which requires Defendant to respond "to the specific errors listed in Section II of Plaintiff's brief" and that her brief address the errors listed in each separate sub-section in Section III.

completing tasks, stating that the child "has a decreased attention span but is significantly improved and generally able to stay on tasks with medication." [R. 20]. He concluded the child's impairment caused "marked limitation" in the domain of interacting and relating with others, stating the child "does fight with his sister and at school, and continues to have anger management issues and defiance, although he has improved some with counseling." *Id.*

In order to reach these conclusions, the ALJ must have discredited, at least to some extent, Plaintiff's testimony at the hearing.[7] However, because the decision contains no credibility determination or finding, it is not evident what weight, if any, the ALJ accorded Plaintiff's testimony. The Tenth Circuit has held that when a claimant is a child who cannot adequately describe his symptoms, the ALJ must accept the testimony of the person most familiar with the child's condition, and that the ALJ must make specific findings concerning the credibility of the parent's testimony just as he would if the child were testifying. *Briggs,* 248 F.3d at 1239. Because the ALJ failed to do so here, this case must be remanded for a proper credibility determination.

## **Conclusion**

This case is reversed and remanded for reconsideration due to the ALJ's failure to adequately discuss the credibility of Plaintiff's testimony. Therefore, the Court does not address Plaintiff's contentions of error with regard to the ALJ's weighing of the medical evidence. The Court notes, however, that the ALJ's decision lacks a clear

---

[7] The child's school records dated 9/21/04 were provided to the Appeals Council and appear to support Plaintiff's testimony that the child's behavioral problems were seriously interfering with his learning in spite of medication. [R. 170-173].

discussion of what specific evidence the ALJ relied upon in determining the extent of limitation caused by the child's impairments in the "domains."  For instance, there is no explanation for the ALJ's finding that the child "has a decreased attention span but is significantly improved and generally able to stay on tasks with medication." [R. 20]. Upon remand, the Commissioner is urged to set forth the weight accorded the evidence as well as the evidence relied upon, or rejected, in determining the extent of functional limitations caused by the child's impairments in each of the "domains."

SO ORDERED this 9th day of February, 2006.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE